## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 18-09130 |
| | ) | Chapter 7 |
| ROBERT M. KOWALSKI, | ) | |
| | ) | Hon. Jacqueline P. Cox |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |

## NOTICE OF FILING

**PLEASE TAKE NOTICE** of the **Criminal Complaint** commencing the criminal case captioned ***United States of America v. Robert M. Kowalski and Jan R. Kowalski***, **19-CR-226 (N.D. Ill. 2019)**, a true and correct copy which is attached hereto.

**Dated:  March 13, 2019**

Respectfully submitted,

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of Debtor's Estate

By: /s/ Devvrat Sinha

    Gus A. Paloian (06188186)
    James B. Sowka (6291998)
    Devvrat Sinha (6314007)
    SEYFARTH SHAW LLP
    233 South Wacker Drive, Suite 8000
    Chicago, Illinois 60606
    Telephone:  (312) 460-5000
    Facsimile:  (312) 460-7000
    gpaloian@seyfarth.com
    jsowka@seyfarth.com
    dsinha@seyfarth.com

    *Counsel to Chapter 7 Trustee Gus A. Paloian*

AO 91 (Rev. 11/11) Criminal Complaint

**EC** MAR 1 1 2019

AUSAs Daniel, Peterson & Netols (312) 353-4128

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F I L E D

MAR 1 0 2019

UNITED STATES OF AMERICA

v.

ROBERT M. KOWALSKI and
JAN R. KOWALSKI

CASE NUMBER:
**UNDER SEAL**

**19CR**

MAGISTRATE JUDGE
SUNIL R. HARJANI

**226**

MAGISTRATE JUDGE HARJANI

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge
and belief.

From on or about March 28, 2018 to on or about March 10, 2019, at Chicago, in the

Northern District of Illinois, Eastern Division, and elsewhere, the defendant(s)s violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 157 | Defendants devised a scheme to defraud and executed and concealed the scheme by filing a bankruptcy case and documents in a bankruptcy case and making false representations in a bankruptcy case, namely *In re Robert M. Kowalski*, case number 18-09130. |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

JACOB EVANS, Special Agent
Federal Deposit Insurance Corporation
Office of Inspector General

Sworn to before me and signed in my presence.

Date: <u>March 10, 2019</u> *at 1:08 pm*

*Judge's signature*

City and state: <u>Chicago, Illinois</u>

<u>Sunil R. Harjani, U.S. Magistrate Judge</u>
*Printed name and Title*

UNITED STATES DISTRICT COURT
                           SS
NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, JACOB EVANS, being duly sworn, state as follows:

1.       I am a Special Agent with the Federal Deposit Insurance Corporation – Office of Inspector General (FDIC-OIG), and have been so employed since approximately May 2018. Previously, I was a Special Agent with the Internal Revenue Service, Criminal Investigation for approximately nine years. My current responsibilities include the investigation of white-collar crime, including bank, mail, wire, and bankruptcy fraud.

2.       This affidavit is submitted in support of a criminal complaint alleging that ROBERT M. KOWALSKI and JAN R. KOWALSKI have violated Title 18, United States Code, Section 157. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging the defendants with devising a scheme to defraud and executing and concealing the scheme by filing a bankruptcy case and documents in a bankruptcy case and making false representations in a bankruptcy case, namely *In re Robert M. Kowalski*, case number 18-09130, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3. This affidavit is based on my participation in this investigation, my training and experience, information obtained from financial institutions, information obtained from witness interviews, information obtained from public records, including information filed in *In re Robert M. Kowalski*, case number 18-09130 and information received from other law enforcement agents, including Special Agents from the Department of Housing and Urban Development, Office of Inspector General; Federal Housing Finance Agency, Office of Inspector General; Department of Treasury, Office of Inspector General; Chicago Housing Authority, Office of Inspector General; Internal Revenue Service, Criminal Investigation; and the Federal Bureau of Investigation.

**Summary of the Offense and Facts Establishing Probable Cause**

4. There is probable cause to believe that ROBERT M. KOWALSKI (hereinafter ROBERT) and JAN R. KOWALSKI (hereinafter JAN), have violated Title 18, United States Code, Section 157 by engaging in a scheme to defraud ROBERT's creditors and the trustee appointed to administer ROBERT's bankruptcy case through which scheme ROBERT and JAN concealed property of ROBERT's bankruptcy estate from ROBERT's creditors and the trustee, and executed and concealed the scheme by filing a bankruptcy petition initiating *In re Robert M. Kowalski*, case number 18-09130 (ROBERT's bankruptcy case); filing documents in ROBERT's bankruptcy case which contained false representations, and making false representations in and to the United States Bankruptcy Court.

5. As set forth in greater detail below, through and as part of this scheme:

a. ROBERT and JAN concealed hundreds of thousands of dollars of property of ROBERT's bankruptcy estate, including cash and cash equivalents, interests in trusts and corporate entities, interest in real estate, rights under executory contracts, causes of action, rents and the rights to collect rents, and personal property;

b. ROBERT and JAN, both attorneys according to ARDC records, used JAN's attorney trust account to conceal hundreds of thousands of dollars that were part of ROBERT's bankruptcy estate. JAN deposited these funds, which included cashier's checks and money orders payable to ROBERT, into JAN's attorney trust account and then JAN used the funds to purchase new cashier's checks payable to ROBERT; and

c. ROBERT attempted to conceal the scheme by obstructing the administration of ROBERT's bankruptcy case; which obstruction included ROBERT and a co-schemer, through the co-schemer's display of a firearm to an agent of the bankruptcy trustee, obtaining entrance to and removing property from a building which was property of ROBERT's bankruptcy estate and from which ROBERT had been excluded by court order.

**Bankruptcy Overview**

6.      The filing of a bankruptcy petition by a debtor creates a bankruptcy estate which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1).

7.      In addition to filing a petition, a debtor is required to file Schedules disclosing the debtor's assets and liabilities and a Statement of Financial Affairs signed under penalty of perjury. *See* 11 U.S.C. § 521(a)(1).

        a.      The Schedules include questions requiring the debtor to disclose whether the debtor has any legal or equitable interests in real estate; watercraft; incorporated and unincorporated business entities, including L.L.Cs; cash, financial accounts; negotiable instruments, including personal checks, cashier's checks and money orders; and claims against third-parties, whether or not a lawsuit has been filed. *See* Schedule A/B questions 1, 4, 16, 17, 19, 20 and 33. The debtor is also required to disclose any executory contracts. *See* Schedule G.

        b.      The Statement of Financial Affairs include questions requiring the debtor to identify his businesses and any legal actions. *See* Statement of Financial Affairs questions 9 and 27.

8.      A debtor who files a Chapter 11 bankruptcy petition is known as a "debtor-in-possession" and is charged with certain obligations and responsibilities as if the debtor was a trustee. *See* 11 U.S.C. § 1107(a). Therefore, the debtor-in-possession is a fiduciary for his creditors whose obligations include being accountable for all estate property, filing Periodic Reports of Entities in Which the Estate of a

4

Debtor Holds a Substantial or Controlling Interest as required by Bankruptcy Rule 2015.3, and filing Monthly Operating Reports showing receipts and disbursements as required by the United States Trustee. *See* 11 U.S.C. § 704(a)(2) and (8).

9.     In all Chapter 11 cases, the United States Trustee conducts an Initial Debtor Interview at which it explains the debtor-in-possession's duties and obligations, including filing the required Periodic Reports of Entities in Which the Estate of a Debtor Holds a Substantial or Controlling Interest, Monthly Operating Reports and opening a Debtor-in Possession Account into which the debtor-in-possession must deposit all funds.

### Filings And Relevant Activity in ROBERT's Bankruptcy Case

10.     On March 29, 2018, ROBERT filed a Chapter 11 bankruptcy petition, *In re Robert M. Kowalski*, case number 18-09130, which is currently pending in the United States Bankruptcy Court for the Northern District of Illinois. Upon the filing of this petition, ROBERT became a debtor-in-possession and all legal or equitable interests that Robert had in property became ROBERT's bankruptcy estate. ROBERT signed the petition below the following: "I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both."

11.     ROBERT filed Schedules and a Statement of Financial Affairs on April 25, 2018, which he amended on May 24, 2018, and again on June 13, 2018, each time

5

signed under penalty of perjury. ROBERT made the following statements in the
Statement and Schedules:

    a.    ROBERT stated that his occupation was real estate management,
but stated that he had no financial accounts open or closed within the past
year.

    b.    ROBERT identified his interest in five limited liability
companies, Indomitable LLC, Invincible LLC, Piorun Properties LLC, Burros
Blancos LLC, and Alta Vista Properties LLC, each with offices at 1918 W.
Cermak, Chicago, IL, as well as his interest in seven land trusts that,
collectively, held eleven properties.

    c.    ROBERT stated that he had \$150 in cash and that he had no
negotiable instruments, including personal checks, cashier's checks or money
orders.

    d.    ROBERT disclosed a Sea Ray Sundancer 460 and two Sea-Doo
Spark jet skis.

    e.    ROBERT identified three lawsuits, *Commonwealth Edison v.
Kowalski*, 2017-M1-501125, *Parkway Bank v. Padilla et al.*, 2017-CH-12174,
and *Kowalski v. Padilla*, 14 D 6997, all in the Circuit Court of Cook County,
Illinois.

    12.    On May 1 and 24 and June 13, and July 24, 2018, ROBERT filed Periodic
Reports and Amended Periodic Reports for Indomitable LLC, Invincible LLC, Piorun
Properties LLC, Burros Blancos LLC, and Alta Vista Properties LLC, in which

6

ROBERT stated for each that the "debtor's estate interest in the entity is the managing member and owner of 100% of limited liability company units" and described the business conducted by these entities as variations of investment in and construction, management, acquisition and sale of real property.

13.   According to US Bank records, ROBERT opened a Debtor-in-Possession Account on or about May 4, 2018. ROBERT filed Monthly Operating Reports signed under penalty of perjury for March through June of 2018, which showed total receipts/ ending balances in the amounts of approximately \$0/\$0, \$10,641/\$0, \$21,285/\$25,776, and \$6,750/\$14,197, respectively. ROBERT did not file a Monthly Operating Report for July 2018.

14.   On August 7, 2018, the Bankruptcy Court issued an order removing ROBERT as the debtor-in-possession and appointing a Chapter 11 Trustee to oversee and manage the bankruptcy estate.

15.   On September 5, 2018, according to a recording of the Section 341 Meeting held that day, which both ROBERT and JAN attended, the Chapter 11 Trustee instructed ROBERT to not collect rents from tenants of properties owned by either the limited liability companies or land trusts identified in ROBERT bankruptcy petition because the rents were property of the bankruptcy estate.

16.   On November 26, 2018, JAN filed an appearance on behalf of ROBERT in ROBERT's bankruptcy case.

17.    On November 30, 2018, the Bankruptcy Court issued an order granting the Chapter 11 Trustee's motion to convert ROBERT's bankruptcy case from a Chapter 11 reorganization to a Chapter 7 liquidation.

**ROBERT and JAN's Concealment of approximately $360,000.**

18.    As set forth below, ROBERT had at least approximately $255,180 in negotiable instruments payable to himself and purchased with funds from the accounts of Burros Blancos LLC and Indomitable LLC at the time ROBERT filed bankruptcy on March 29, 2018. Therefore, ROBERT falsely represented in his Schedules that he had no negotiable instruments. ROBERT obtained an additional approximately $29,900 in cashier's checks after he filed bankruptcy, but before the trustee was appointed. ROBERT's Monthly Operating Reports were also false in that ROBERT did not account for the approximately $29,900 in cashier's checks. Moreover, ROBERT did not, as he was required to do, deposit into the debtor-in-possession account the approximately $285,080 in cashier's checks. Instead, ROBERT concealed these funds from his creditors and the trustee by transferring those cashier's checks to JAN, who deposited them into her IOLTA attorney trust account. According to records obtained from Bank of America, between August 2018 and October 2018, JAN deposited cashier's checks payable to ROBERT totaling approximately $362,166. JAN then used those funds in her attorney trust account to purchase cashier's checks payable to ROBERT.

19.    Records obtained from Byline Bank show that two entities wholly-owned by ROBERT, namely, Indomitable LLC and Burros Blancos LLC, held accounts at

8

Byline Bank: Indomitable LLC account XXXX806 and Burros Blancos LLC account XXXXXX1525, for which ROBERT was the sole signatory. Byline Bank issued the following cashier's checks naming ROBERT as both remitter and payee, many of which were drawn on either the Indomitable LLC or Burros Blancos LLC accounts:

| Account | Number | Date Issued | Amount | Negotiated |
|---|---|---|---|---|
| Burros Blancos LLC | 10226853 | 8/31/2017 | $2,500.00 | 10/9/18 |
| Burros Blancos LLC | 10226873 | 9/14/2017 | $2,000.00 | 10/9/18 |
| Burros Blancos LLC | 10226874 | 9/14/2017 | $2,000.00 | 10/9/18 |
| Unknown | 10227031 | 12/22/2017 | $20,000.00 | 8/31/18 |
| Indomitable LLC | 10227075 | 1/29/2018 | $5,000.00 | 9/7/18 |
| Indomitable LLC | 10227076 | 1/30/2018 | $10,000.00 | 9/6/18 |
| Unknown | 10224264 | 1/31/2018 | $10,000.00 | 9/7/18 |
| Unknown | 10224265 | 1/31/2018 | $10,000.00 | 9/7/18 |
| Indomitable LLC | 10227077 | 1/31/2018 | $10,000.00 | 9/10/18 |
| Indomitable LLC | 10227078 | 1/31/2018 | $10,000.00 | 9/10/18 |
| Indomitable LLC | 10227079 | 1/31/2018 | $10,000.00 | 9/10/18 |
| Indomitable LLC | 10227082 | 2/1/2018 | $10,000.00 | 9/11/18 |
| Indomitable LLC | 10227083 | 2/1/2018 | $10,000.00 | 9/11/18 |
| Indomitable LLC | 10227084 | 2/1/2018 | $10,000.00 | 9/11/18 |
| Indomitable LLC | 10227085 | 2/1/2018 | $10,000.00 | 9/12/18 |
| Indomitable LLC | 10227086 | 2/1/2018 | $10,000.00 | 9/13/18 |
| Indomitable LLC | 10227104 | 2/15/2018 | $11,500.00 | 9/13/18 |
| Indomitable LLC | 10227135 | 2/28/2018 | $7,000.00 | 9/21/18 |
| Indomitable LLC | 10227136 | 2/28/2018 | $10,000.00 | 9/14/18 |
| Indomitable LLC | 10227137 | 2/28/2018 | $15,000.00 | 9/12/18 |
| Indomitable LLC | 10227138 | 2/28/2018 | $7,500.00 | 9/17/18 |
| Indomitable LLC | 10227139 | 2/28/2018 | $5,000.00 | 9/17/18 |
| Indomitable LLC | 10227153 | 3/13/2018 | $7,500.00 | 9/20/18 |
| Indomitable LLC | 10227154 | 3/13/2018 | $15,000.00 | 9/14/18 |
| Indomitable LLC | 10227155 | 3/13/2018 | $7,500.00 | 9/20/18 |
| Indomitable LLC | 10227156 | 3/13/2018 | $7,480.00 | 9/20/18 |
| Indomitable LLC | 10227160 | 3/19/2018 | $6,500.00 | 9/21/18 |
| Unknown | 10227171 | 3/26/2018 | $5,000.00 | 9/21/18 |
| Unknown | 10227172 | 3/26/2018 | $5,000.00 | 9/21/18 |
| Indomitable LLC | 10227181 | 3/28/2018 | $3,700.00 | 9/27/18 |
| Indomitable LLC | 10227216 | 4/18/2018 | $15,000.00 | 9/17/18 |

| Indomitable LLC | 10227223 | 4/24/2018 | $4,500.00 | 9/27/18 |
|---|---|---|---|---|
| Indomitable LLC | 10227224 | 4/24/2018 | $4,500.00 | 9/27/18 |
| Unknown | 10227289 | 6/12/2018 | $5,902.57 | 9/27/18 |
| | | Total: | $285,082.57 | |

20. Thirty of the thirty-four above-listed cashier's checks were issued prior to ROBERT's filing of his bankruptcy petition and remained outstanding at the time ROBERT filed his bankruptcy petition. Byline Bank issued the remaining four above-listed cashier's checks after ROBERT filed his bankruptcy petition.

21. Based on my review of documents filed in ROBERT's bankruptcy case, ROBERT did not, as he was required to do, disclose any of the thirty-four above-listed cashier's checks to the creditors and the trustee.

22. Records obtained from Bank of America show that the thirty-four above-listed cashier's checks were deposited into JAN's attorney trust account, account number XXXXXX7233, on the dates listed in the "Negotiated" column above. Bank of America surveillance video of transactions involving check numbers 10227082, 10227083, 10227084, 10227085, and 10227086 show that JAN deposited those five checks.

23. In addition to the thirty-four above-listed cashier's checks payable to ROBERT, ROBERT caused Byline Bank to issue two cashier's checks with ROBERT as the remitter and INDIVIDUAL A as the payee. Check number 10227294, drawn on an account held by Piorun Properties LLC, and check number 10227295, drawn on an account held by Indomitable LLC, were both in the amount of $5,000 and dated June 18, 2018. Both of these cashier's checks were negotiated on August 1, 2018.

10

According to testimony given by INDIVIDUAL A during a November 2018 hearing in the bankruptcy case, INDIVIDUAL A was in a romantic relationship with ROBERT.

24.     Between September 9, 2018, and October 25, 2018, JAN also deposited the following checks into her attorney trust account:

a.     Two Byline Bank cashier's checks naming ROBERT as remitter and Premium Title as payee: check number 10227384, issued August 13, 2018, in the amount of $64,084.35; and check number 10227385, issued August 13, 2018, in the amount of $3,000. Records of Bank of America indicate that these cashier's checks were deposited into JAN's attorney trust account.

b.     A personal check from Individual SLT, check number 262, in the amount of $650 and dated September 9, 2018. "Sept. Rent" appeared on the memo line of this check. These checks appear to be rent for property of ROBERT's bankruptcy estate, as the investigation has not revealed that JAN owns any rental property.

c.     A personal check from Individual LNH, check number 503, in the amount of $400 and dated September 8, 2018. "2712 W. [XXXXXX] Apt. 3R" appeared on the memo line of this check.

d.     Two personal checks from Individual DLQ, check numbers 3404 and 3505, each in the amount of $820 and dated September 1, 2018. "Rent 4547 S. [XXXXXX]" appeared on the memo line of each of these checks.

25.     Records obtained from Bank of America show that between September 2018 and October 2018, JAN withdrew approximately $314,417 in funds from her

11

attorney trust account in the form of cashier's checks payable to ROBERT, including the following checks:

| Check Date | Number | Amount | Status |
|---|---|---|---|
| 9/5/2018 | 1589302605 | $10,000.00 | Returned to IOLTA 10/12/18 |
| 9/10/2018 | 1580410150 | $25,000.00 | Returned to IOLTA 11/9/18 |
| 9/12/2018 | 1630110971 | $30,000.00 | Returned to IOLTA 11/14/18 |
| 9/13/2018 | 1642010755 | $25,000.00 | Returned to IOLTA 11/15/18 |
| 9/14/2018 | 1593316913 | $21,500.00 | Returned to IOLTA 11/23/18 |
| 9/17/2018 | 1644621108 | $25,000.00 | Returned to IOLTA 11/17/18 |
| 9/19/2018 | 1589302625 | $5,000.00 | Outstanding |
| 9/21/2018 | 1580410241 | $25,000.00 | Returned to IOLTA 11/21/18 |
| 9/25/2018 | 1580410255 | $23,000.00 | Returned to IOLTA 11/29/18 |
| 9/28/2018 | 1580410285 | $18,602.57 | Returned to IOLTA 11/29/18 |
| 10/1/2018 | 1589302641 | $64,084.35 | Negotiated |
| 10/11/2018 | 1580410376 | $5,100.00 | Negotiated |
| 10/11/2018 | 1580410377 | $2,000.00 | Negotiated |
| 10/15/2018 | 1580410399 | $3,391.49 | Negotiated |
| 10/29/2018 | 1580410454 | $3,740.00 | Returned to IOLTA 11/29/18 |
| | Total: | $286,418.41 | |

26. At the time JAN negotiated the Byline Bank cashier's checks payable to ROBERT, and at the time she obtained Bank of America cashier's checks payable to ROBERT, JAN knew that her brother, ROBERT, had filed a bankruptcy petition. According to witnesses, JAN attended various proceedings in ROBERT's bankruptcy case, including the hearing on August 7, 2018, during which the Bankruptcy Court appointed the trustee, and the September 5, 2018, Section 341 Meeting of creditors at which the trustee instructed ROBERT not to collect rents for properties belonging to the bankruptcy estate. JAN was also familiar with the obligations of a debtor in bankruptcy as she had filed bankruptcy herself in 2008 in the Northern District of Illinois, case 08-27573.

## Concealment of the Mountain Duck Properties LLC

27.     The investigation has revealed that ROBERT has concealed his interest in Mountain Duck Properties LLC, and land trusts through which ROBERT owned additional properties and also concealed litigation concerning that LLC.

28.     On or about October 3, 2017, ROBERT, represented by JAN, filed a verified complaint in the Circuit Court of Cook County, Illinois, against Angelica A. Kowalski, Mountain Duck Properties LLC, and Cityscape Chicago, LLC. (17 CH 13314). ROBERT made the following allegations:

   a.     ROBERT is the father of defendant Angelica Kowalski.

   b.     ROBERT is the "rightful owner of various assets including real properties held in the name of land trusts and limited liability companies and the funds generated from those real properties."

   c.     ROBERT "provided all consideration for the acquisition of these real properties, land trusts, limited liability companies."

   d.     ROBERT "placed naked title only to these real properties, land trusts and limited liability companies in the name of Angelica as a nominee or straw person."

   e.     ROBERT did not gift the real properties, land trusts and limited liability companies to Angelica.

   f.     "Angelica did not provide any consideration for these real properties, land trusts and limited liability companies."

13

g.     "These real properties, land trusts and limited liability companies were placed in Angelica's name to shelter them from actual and contemplated litigation and potential creditor claims against" ROBERT.

h.     "Angelica is in possession of and owns title to real properties, land trusts and limited liability companies which were acquired by [ROBERT] with his funds and which rightfully belong to [ROBERT]."

i.     ROBERT "is the rightful owner of the real properties, land trusts and limited liability companies."

29.    ROBERT signed the verified complaint. The "Verification by Certification," which appears above ROBERT's signature, states "Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true."

30.    According to the documents filed in ROBERT's bankruptcy case, ROBERT did not disclose *Kowalski v. Mountain Duck Properties LLC* nor his interest in Mountain Duck Properties LLC in either the Schedule A/B or the Statement of Financial Affairs he filed on April 25, May 24, or June 13, 2018.

31.    On May 24, 2018, ROBERT testified under oath at a Section 341 meeting of creditors. According to an audio recording of that meeting, when asked whether he or his entities had an interest in a property located at 2242 West Cermak

14

in Chicago, Illinois, ROBERT responded that his "daughter Angelica's company, Mountain Duck Properties LLC," has an interest in that property.[1] ROBERT did not claim any interest in the property or Mountain Duck LLC.

32.     On July 4, 2018, creditor Martha Padilla filed a proof of claim in ROBERT's bankruptcy case. Padilla is ROBERT's wife, and her proof of claim included as exhibits her petition for dissolution of marriage against ROBERT as well as ROBERT's verified complaint against Mountain Duck LLC.

33.     On August 8, 2018, during a Bankruptcy Court hearing, ROBERT admitted that he has an interest in the Mountain Duck LLC.

34.     According to my review of documents filed in *In re Robert M. Kowalski*, on November 30, 2018, the Bankruptcy Court converted ROBERT's bankruptcy case from Chapter 11 to Chapter 7. The Bankruptcy Court ruled that ROBERT "demonstrated bad faith by failing to disclose the state court complaint he filed pre-petition against his daughter to recover nine unscheduled properties that he may have transferred to her pre-petition." The Bankruptcy Court further reasoned that ROBERT's refusal to turn over rents collected for properties owned by the bankruptcy estate to the appointed trustee not only showed bad faith on ROBERT's part, but also diminished the value of the bankruptcy estate by denying the estate assets it had a right to receive."

---

[1] Other agents participating in this investigation have attended proceedings in the Bankruptcy Court during which KOWALSKI appeared and spoke, have compared the voice on the audio recording of this 341 meeting to that of KOWALSKI, and have determined that they are the same voice.

**Transfer/Concealment of the Jet Skis**

35.     The investigation has revealed that ROBERT has concealed personal property of the estate by transferring it to a third party. According to documents obtained from Citibank, ROBERT obtained financing to purchase two jet skis on or about May 24, 2017. The Hull Identification Number for those jet skis were YDV609421617 and YDV48715A616. As of March 13, 2018, the balance for the two jet skis was $9,158.57.

36.     ROBERT identified "2 Spark jet ski's" as vehicles he owned in his April 25, 2018, Schedule A/B: Property. He valued the two jet skis at $10,000, and did not list anyone else as having an interest in the jet skis.

37.     According to records obtained from the Illinois Department of Natural Resources, on June 25, 2018, ROBERT sold the two jet skis, along with a trailer, to INDIVIDUAL B for $5,000.  ROBERT neither sought Bankruptcy Court permission to sell the jet skis, included the transaction in his monthly operating report, nor deposited the proceeds into the debtor-in-possession account.

38.     According to records obtained from Chase Bank, INDIVIDUAL B wrote a check for $5,000 to ROBERT M. KOWALSKI on or about June 23, 2018. That check posted on June 27, 2018. "ROBERT M. KOWALSKI" endorsed the check to account number XXXX806, which is held by INDOMITABLE LLC at Byline Bank.

16

## Concealment of Section 8 Rent Subsidy Payments

39.     Investigation has revealed that ROBERT has concealed Section 8 rent subsidy payments which he was required to report on his monthly operating reports, to deposit into the debtor-in-possession account and later to tender to the trustee.

40.     The Chicago Housing Authority (CHA) administers the Section 8 Voucher Program, which pays rental subsidies to landlords using funds from the Department of Housing and Urban Development (HUD). According to CHA records ROBERT caused Piorun Properties LLC, and Indomitable LLC to enter Section 8 Vendor agreements whereby the LLCs would receive direct deposit of HUD funds into the LLC's accounts at Byline bank for which ROBERT was the sole signatory. From March 29, 2018 until the end of 2018, Piorun received approximately $27,959 and Indomitable received approximately $63,291. ROBERT did not account for these funds on his monthly operating reports or deposit the funds into the debtor-in possession account. Neither did ROBERT otherwise timely disclose the Section 8 Vendor agreements as an executory contract or any of this approximately $91,250 to his creditors or the trustee.

### Continued Obstruction of the Bankruptcy

41.    Investigation has revealed that ROBERT attempted to conceal the scheme by obstructing the administration of ROBERT's bankruptcy case; which obstruction included ROBERT and a co-schemer, through the co-schemer's display of a firearm to an agent of the bankruptcy trustee, obtaining entrance to and removing property from a building which was property of ROBERT's bankruptcy estate and from which ROBERT had been excluded by court order.

42.    ROBERT and JAN, shared office space at 1918 West Cermak Avenue in Chicago, Illinois. That property now belongs to the bankruptcy estate. As such, on or about January 9, 2019, the trustee filed a motion for turnover of the Cermak property. The Bankruptcy Court granted that motion on or about January 18, 2019, and ordered that ROBERT turnover possession of the Cermak property to the trustee and that ROBERT and his agents "are hereby prohibited from interfering with the Trustee's possession of the [Cermak property]".

43.    According the maintenance worker employed by the trustee, on or about the evening of February 21, 2019, the trustee had the maintenance worker change the locks to the Cermak property. After the maintenance worker finished changing the locks, an individual, who identified himself as "Attorney A" and as JAN's attorney, and who showed the maintenance worker a card identifying himself as an attorney, asked the maintenance worker for access to the Cermak property. JAN was then in federal custody as the Bankruptcy Court had held JAN in contempt for failure to provide information concerning the location of ROBERT's assets, in

18

particular hundreds of thousands of dollars that was property of the bankruptcy estate. The maintenance worker allowed Attorney A access to the Cermak property and saw Attorney A look around and take pictures. The maintenance worker then saw Attorney A exit the Cermak property.

44.    According to the maintenance worker, he, the maintenance worker, exited the Cermak property a short time later and got into a vehicle. As he tried to drive away, a red truck driven by ROBERT and a sedan in which Attorney A was a passenger arrived and blocked the maintenance worker's vehicle. ROBERT then approached the maintenance worker and asked the maintenance worker to let ROBERT into the Cermak property. A short time later, Attorney A approached the maintenance worker and ROBERT. Attorney A then showed the maintenance worker a firearm in Attorney A's waistband and told the maintenance worker to let Attorney A and ROBERT into the Cermak property. After seeing the firearm, the maintenance worker complied. As he reached for his keys, the maintenance worker was able to activate a video recording device.

45.    According to the maintenance worker, he opened the door to the Cermak property. ROBERT then reached inside the door to the Cermak property and took a small object that the maintenance worker believed to be a hard drive. The maintenance worker recorded Attorney A and ROBERT while they were at the door to the Cermak property. I have shown the video recording to witnesses who are familiar with ROBERT and Attorney A from court appearances and who have

identified the individuals recorded by the maintenance worker as ROBERT and Attorney A.

46. After retrieving the object from the Cermak property, ROBERT returned to ROBERT's GMC pickup and drove away. As ROBERT drove away, Deputy United States Marshals saw ROBERT driving the GMC pickup and arrested ROBERT on a warrant issued by the Bankruptcy Court. According to documents obtained from the Bankruptcy Court, this warrant stemmed from a contempt order based on ROBERT's refusal to comply with the Bankruptcy Court's discovery orders.

47. At the time of his arrest, the Deputy United States Marshals took the keys to the ROBERT's GMC pickup and left it parked in a tow-zone along the public way. Subsequently, I and other agents participating in this investigation searched ROBERT's GMC pickup pursuant to a warrant (19M125). Among the things that I recovered were approximately in $9,700 in money orders. Based on the word "rent" in the note field, the address or name of the remitter and our subsequent interviews with the remitters and confirmation with the trustee, these money orders were rent payments for property of ROBERT's bankruptcy estate and should have been paid to the trustee, but instead ROBERT had collected and was concealing them.

## CONCLUSION

48.    Based on the information above, there is probable cause to believe that, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI, devised a scheme to defraud and executed and concealed the scheme by filing a bankruptcy case and documents in a bankruptcy case and making false representations in a bankruptcy case, namely *In re Robert M. Kowalski*, case number 18-09130

FURTHER AFFIANT SAYETH NOT.

JACOB EVANS
Special Agent,
Federal Deposit Insurance Corporation
Office of Inspector General

SUBSCRIBED AND SWORN to before me on March 10, 2019.

SUNIL R. HARJANI
United States Magistrate Judge

21